**SINGER v. SHAUGHNESSY, Collector of Internal Revenue.**

No. 236, Docket 22319.

United States Court of Appeals
Second Circuit.

Argued May 7, 1952.

Decided July 14, 1952.

Smith & Sovik, Syracuse (William J. Mackay, Syracuse, argued), for L. W. Singer estate.

Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Elizabeth B. Davis, Sp. Asst. to the Acting Atty. Gen., Edmund Port, U. S. Atty., Syracuse, for Collector.

Before SWAN, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, as executrix of the estate of her husband, L. W. Singer, who died on August 21, 1944, filed an estate tax return and paid the tax computed thereon. Thereafter, she filed a timely claim for the refund of part of the tax so paid. Upon audit of the return a deficiency was determined which was paid by the executrix who also filed a timely claim for the refund of that. Both claims were denied and she brought this suit against the collector to recover what she had claimed as overpayments. A jury returned a special verdict and, from a judgment entered thereon for a part of the amount so claimed, both parties have appealed.

The appeal of the plaintiff puts in issue the value for estate tax purposes of the decedent's interest in a business conducted under the name of L. W. Singer & Co., and

the proper part of the proceeds of two policies of insurance upon his life to be included in his gross estate.

The appeal of the defendant puts in issue the extent to which there is includible in the decedent's gross estate: property jointly held by him and his wife; a joint bank account; promissory notes made by her payable to him; and two joint and survivor annuity policies which the plaintiff claims were given to her by her husband shortly before he died.

When Mr. and Mrs. Singer were married in 1926 he was a salesman for a book publishing company and also owned a small publishing business in Syracuse, New York called the L. W. Singer Company. Mrs. Singer took an active part in conducting the business of the L. W. Singer Company while Mr. Singer continued his work for some years as a salesman for his employer and devoted what spare time he could to helping his wife run the Singer Company. Subsequently he gave up his other work and devoted all his time to the business. He and his wife were successful in that and continued to run the business together until he died. On May 31, 1944, they executed a formal agreement setting forth that Mr. Singer had owned and operated the business for twenty years and that for eighteen years Mrs. Singer had been associated with him as an employee during which time she had "become thoroughly acquainted with and versed in all phases of the business and now constitutes a valuable and important part thereof, although she has no financial interest therein," and that he had increasingly been relying upon her aid and advice particularly during the preceding two years. He, consequently, desired to create a partnership with her and to sell her an undivided one half interest in the business. According to this agreement, he did sell her such interest for $100,000 payable $28,000 in cash and $18,000 on June 1, 1945, $18,000 on June 1, 1946 and $6000 on June 1, in each succeeding year until the unpaid balance had been paid with interest at 3%. She paid him the $28,000 in cash and gave him notes for the remainder.

In the estate tax return she filed, she set up the decedent's interest in the business at one half and valued his share at $100,000. She also included his distributive share of undivided profits in the amount of $68,994.-16. Certain stocks and bonds and miscellaneous property held in their joint names, the promissory notes she had made payable to him together with accrued interest, the proceeds of two life insurance policies which matured at his death and in each of which she was named as the beneficiary were also listed in the return as the decedent's property. She filed an income tax return for herself for 1944 in which she reported one half of the profits of the business from June 1, 1944 through August 21st and all of the profits of it for the remainder of that year. In an income tax return which she filed for Mr. Singer covering the period from January 1st through August 21st, she included the entire profits of the business up to June 1st and one half of them from that date through August 21st. She did not include in the estate tax return filed the value of two annuities. One of these was purchased in 1943 by Mr. and Mrs. Singer and it provided for joint monthly payments to them beginning April 17, 1943 and continuing during their lives and after the death of one to the survivor for life; the other was purchased on June 19, 1944 providing for joint monthly payments beginning on that date and continuing as those did upon the first contract with like survivorship rights. In her income tax return for 1944 she included one half of the annuity payments made in 1944 from January 1, 1944 to August 21, 1944 and the remaining half in the income tax return filed for her husband.

In filing these returns she had acted in accordance with the statements in the agreement she made with her husband on June 1, 1944 to the effect that she then had, for the first time, acquired a financial interest in the L. W. Singer Company. But she changed her position and filed an amended estate tax return based on the contention that she had been an equal partner with her husband in the L. W. Singer Company from the time she took an active part in its affairs after her marriage to the date of his death. The adjustments she made on that basis reduced his distributive

share of the partnership profits and, since the jointly owned real and personal property had been acquired with L. W. Singer Company funds, which also made up the bank account and which had been used to pay the premiums on the life insurance policies, the result was the inclusion for estate taxes of only one half of any of these items.

The denial of the claims for refunds and the determination of the deficiency resulted in part from the refusal to accept and give effect taxwise to the new position of Mrs. Singer as a partner in the business before June 1, 1944, or her contention that a valid gift of the annuity contracts had been made to her. The remainder of the deficiency was due to the increase in the value of decedent's interest in the business and the denial of Mrs. Singer's contention that her notes had been given her husband with no intention on the part of either that they would ever be paid and so were not obligations owed him when he died.

The disputed issues of fact were submitted to the jury after the defendant moved for a directed verdict, action on the motion being held in abeyance. In the special verdict taken, the jury gave the following answers to the following questions:

"1. Was there a partnership agreement to conduct the business of L. W. Singer existing between Frances A. Singer and her husband, Leland W. Singer, at or about the time they were married on July 24th, 1926, and did such partnership remain effective throughout the period of the conduct of the business of the L. W. Singer company through the years 1926 to June 1st, 1944? Yes.

"2. If you find there was no valid partnership agreement existing was there an agreement between Mr. and Mrs. Singer as to the sharing of profits between them from the business of the L. W. Singer Company? (Not answered.)

"3. If you find that either a valid partnership agreement or a valid profit sharing agreement existed between the parties, what were the percentage proportions of such profits that was

agreed should be owned by Mrs. Singer? Fifty per cent.

"4. Were the stocks set forth in Exhibit 37A and the bonds set forth in Exhibit 37B, the real estate set forth in Exhibit 37C and the miscellaneous property set forth in Exhibit 37D, the annuity issued by the Connecticut Mutual Life Insurance Company on April 6th of 1943, the insurance policy issued by the Connecticut Mutual Life Insurance Company on December 1, of 1944, the insurance policy issued by the New England Mutual Life Insurance Company on November 1 of 1932, and the policy issued by the Equitable Life Insurance Company of Iowa on the 30th day of August, 1930, purchased or acquired by Mr. and Mrs. Singer out of profits from that operation of the L. W. Singer Company by them? Yes.

"5. Did Mr. Singer make absolute, complete and effective gifts to Mrs. Singer of the annuity policies issued by the Connecticut Mutual Life Insurance Company on April 6, 1943 and June 19, 1944? (If the answer to this question is no, disregard the next question.) Yes.

"6. If you find that such valid gifts were made, were such gifts made by Mr. Singer in contemplation of death? No.

"7. Were the promissory notes of a face value of $72,000 signed by Mrs. Singer, valid obligations due and owing by Mrs. Singer to Mr. Singer? No.

"8. What was the fair market value of the L. W. Singer Company as of the date of Mr. Singer's death on August 21st, 1944? $275,000.00.

"9. Was the cash on deposit at the Lincoln National Bank in the sum of $170,019.19, money belonging to Mr. and Mrs. Singer equally at the time of his death? Yes."

The defendant moved to set aside the special verdict as against the evidence and that and his motion for a directed verdict were then denied. It was held as a matter of law that the entire proceeds of the life insurance policies were includible in the

gross estate of the decedent but, in all other respects, judgment was entered for the plaintiff in accordance with the special verdict.

### The Plaintiff's Appeal.

■ As to the inclusion of the entire proceeds of the life insurance policies there was no error. In each, the decedent had the right to change the beneficiary and that alone was enough as an "incident of ownership" to make the entire proceeds of each includible in his gross estate under § 811(g) (2) (B), I.R.C., 26 U.S.C.A. § 811(g) (2) (B). Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116. Appellant's argument that § 811(a) applies is unsound in that it is a general provision while § 811(g) is a special provision dealing with the particular subject here in dispute.

■ The remaining part of the plaintiff's appeal is based upon her insistence that, in arriving at the valuation of $275,000 for the business of L. W. Singer Company at the decedent's death, the decedent's distributive share was included by the jury. Since this was set up as a separate item in the estate tax return, as it was taxable, Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 it would, of course, tax it twice if the jury also included it in the valuation of the business. The trial judge was not impressed by this assertion and neither are we. There was evidence to show that the fair market value of the business was not less than $385,000 and other evidence to show it to be less than the $275,000 found. The judge defined "fair market value" in his charge to be "a net value equal to an amount which a willing purchaser, * * * would pay to a willing seller in view of the value of the assets and the demonstrated earning capacity." Since the finding has substantial evidence in the record to support it, it is now given effect. That the decedent's distributive share was mistaken by the jury as an asset of the business is but an unwarranted assumption of what was unlikely and, with substantial evidence to support the finding without so doing, no error in the trial judge's refusal to disturb the special verdict on that ground appears.

### The Defendant's Appeal.

■ Most of the defendant's appeal rests upon his insistence that Mr. and Mrs. Singer were not partners in the business until they executed their agreement of June 1, 1944. The recitations in that document, as well as other evidence, support his contention. However, there was substantial evidence to show that they understood that Mrs. Singer, from the time she became connected with the business following her marriage, was to be a joint owner of the enterprise. She was a potent factor in its success. She had charge of it while her husband was away on his work as the salesman of another company and there was evidence to show that he always relied largely upon her ability and deferred to her judgment. The profits which were withdrawn were always invested in property in their joint names or maintained in bank accounts in their joint names except for a small personal account of Mrs. Singer's out of which she paid their household expenses. In short, they conducted the business together and shared the net profits as equal partners would have done. Indeed, she seems to have been the more dominant one in guiding the business. That was enough to take this question to the jury. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. It was submitted in a charge which was without error. It was not necessary, as the defendant contends, to prove an express partnership agreement. Weizer v. Commissioner, 6 Cir., 165 F.2d 772. If, as it did, the evidence justified an inference that such an agreement did exist, the special verdict forecloses that question here. So we now take it as established that Mr. and Mrs. Singer, as equal partners, owned and operated the business known as L. W. Singer Company from the time she began her work until he died. Since all the property held in their joint names was purchased with funds earned by them together and withdrawn from the business, it follows that only one half of the value of such property was includible in the decedent's gross estate. Rogan v. Kammerdin-

er, 9 Cir., 140 F.2d 569; Berkowitz v. Commissioner, 3 Cir., 108 F.2d 319. For the same reason one half only of the joint bank account was includible.

 Nor was it error to exclude the promissory notes executed by Mrs. Singer from the decedent's gross estate. They were executed at the same time that the partnership agreement of June 1, 1944 was entered into and there was evidence to the effect that that agreement was executed merely to make formal the existing partnership relationship without intent on his or her part that the notes which she never delivered to him, were to be paid. And this is consistent with the finding that a partnership existed prior to the execution of the 1944 agreement.

 There was also sufficient evidence to support the jury's finding that Mr. Singer made completed gifts to his wife of the two annuity policies and that the gifts were not in contemplation of death. The first of these was purchased on April 6, 1943 with partnership funds and provided for payments, beginning April 17, 1943, of $23.00 monthly to them jointly while they both lived and then to the survivor. In June 1944 a single premium life insurance policy on Mr. Singer's life, which had been paid for with funds of the L. W. Singer Company, matured and Mr. and Mrs. Singer used the proceeds to buy a similar joint and survivor annuity contract which paid them $227.00 monthly and would make the entire contemplated joint annuity $250.00 monthly. When each of these policies was delivered Mr. Singer told his wife that it was hers and handed it to her and she kept possession of it. Whenever annuity checks were received they were payable to them jointly but he endorsed the checks and gave them to her. She used the proceeds as she pleased. The jury evidently believed this evidence. It shows in the absence of any requirement of notification to the insurance company a completed gift. However, the defendant contends that, since the gifts were made within two years of death, and the burden was upon the donee to show that each was not made in contemplation of death this part of the verdict should have been set aside because of lack of proof.

Sec. 811(c), I.R.C. As to that, the record shows that Mr. Singer suffered a heart attack in 1942 and, as before stated, that he died in August 1944. But, as late as June 1944, he had elected not to take down his share of the proceeds of the matured life insurance policy, or to continue the coverage under it. Instead, he invested them in a contract more valuable if he lived than if he died. His health had improved since 1942 and he and Mrs. Singer were considering expanding the business and arranging matters so that they could delegate some of their responsibilities and take things easier. The jury was charged in accordance with United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867, where the principles to govern decision as to this baffling problem were set forth and we find no error in the acceptance by the trial judge of the special verdict in this respect.

Judgment affirmed.