**Minnie ALTSHULER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 10084.**

United States District Court
W. D. Missouri, W. D.

Sept. 23, 1958.

Rich & Rich, Kansas City, Mo., for plaintiff.

Edward L. Scheufler, U. S. Atty., Joseph L. Flynn, Asst. U. S. Atty., Kansas City, Mo., for defendant.

RIDGE, District Judge.

This is an action for refund of a portion of Estate Tax, assessed against the Estate of Joe Armand Altshuler, Deceased, and paid by plaintiff, his widow and sole legatee. It is stipulated and agreed that all conditions precedent to the maintenance of this action by plaintiff have been fulfilled and that this Court has jurisdiction of the instant claim.

There is no dispute between the parties as to the facts. The claim for refund revolves around a portion of the proceeds of two "Retirement Income Policies" of insurance issued by Massachusetts Mutual Life Insurance Company (hereinafter called "Massachusetts Mutual") pursuant to a Pension Trust Agreement executed on December 14, 1943, by Stratford Engineering Corporation (hereinafter referred to as "Stratford"). Under such plan as originally established, funds were contributed to a Trustee, by Stratford, to be invested so as to provide "Retirement Income or Annuities on the lives of, or for the benefit of" its participating employees, and death benefits limited to persons related to the Participant, dependents upon him, or his estate. The plan was administered by a Pension Committee. The Pension Committee, within its discretion, was authorized to apply for the insurance policies to be issued under the plan, select the Insurer, and form of contract. Originally, the Trust Agreement provided that Stratford would provide the entire cost of the insurance contracts. However, by subsequent amendment to the plan Stratford's contributions were limited to five percent (5%) of the annual compensation of eligible employee-participants. On December 18, 1944, the Pension Trust Agreement was also amended to provide:

"The right to change and successively change the death beneficiary without the consent of the Participant or any beneficiary is solely for the purposes of the dealings with the issuing insurance company; but the Trustee shall make no change in death beneficiary excepting upon the written, signed request of a participant lodged with the Pension Committee and by the Pension Committee lodged with the Trustee."

In the case at bar, on November 1, 1943, two "Retirement Income Policies" were obtained by the Pension Committee from Massachusetts Mutual, wherein Joe A. Altshuler, plaintiff's decedent, an eligible Participant under the Pension Plan, was named as the insured and

plaintiff the named death beneficiary. Briefly, the policies by their terms provided for a monthly life income to plaintiff's decedent beginning on a specified retirement date, and in the event of the insured's death prior to retirement a death benefit to the plaintiff in the total sum of $36,500. Joe A. Altshuler died on November 26, 1950. The total amount of death benefits received by plaintiff under the above policies, reduced because of premium loans, was $34,258.37.

While the above-mentioned policies of insurance were in force, Massachusetts Mutual ·established a "reserve fund" which was accumulated in its hands from premium payments made pursuant to the provisions of such policies. The amount of that "reserve fund" increased as additional premiums were paid. The amount accumulated at the date of death of Joe A. Altshuler amounted to $10,229.-06. It is stipulated and agreed that such sum is equal to the amount of deferred compensation paid by Stratford to plaintiff's decedent pursuant to its Pension Trust Plan; and that if plaintiff's decedent had reached retirement age prior to his death said sum of $10,229.06, with any additional accumulations in the "reserve fund", would have been payable to him by the Trustee as retirement income under the Pension Trust Plan. This, because "during the lifetime of the insured, the Retirement Income payments provided by the polic(ies were to be) made to the said Trustee, or its successor in trust," unless Massachusetts Mutual received written request from the Trustee, electing otherwise. However, as it turned out, the Trustee never received any part of the "reserve fund" from Massachusetts Mutual. The death benefits payable under the policies of insurance in question were paid direct to plaintiff as the named beneficiary therein. Because the amount accumulated in the "reserve fund" is equal to the amount of deferred compensation paid to Joe A. Altshuler, deceased, under Stratford's Pension Trust Plan, it is plaintiff's contention that $10,229.06 of the death benefits paid to her is not an asset to be included in the gross estate of her decedent; that as a consequence of the death of Joe A. Altshuler she is, as to the above amount, the ultimate "receiver" of deferred compensation payable to her decedent and, as such, is only liable to pay income taxes on the said sum as and when received by her. Thus plaintiff, conceding that $22,-583.64 of the total sum she received as death beneficiary under the retirement insurance contracts here considered is to be included in the gross assets of the estate of Joe Altshuler, deceased, for estate tax purposes, undertakes to apportion the face amount of death benefits payable to her under said policies by asserting that $10,229.06 thereof is not subject to an estate tax under Section 811(c) (f) or (g) of the 1939 I.R.C., 26 U.S.C.A. § 811(c, f, g).

· Because it is so apparent from the facts in this case that the entire sum received by plaintiff as life beneficiary of the two income policies here involved is subject to an estate tax under Section 811(g) (2) (B) of the Internal Revenue Code of 1939, we shall not undertake to follow the parties through all the ramifications and divergent argument they make to the Court in this case. Suffice to say plaintiff proffers no authorities sustaining any part of the contentions she here makes. Neither does she undertake to establish any unique quality in the policies of insurance in question that distinguishes them from straight life policies so far as death benefits are concededly payable to her, as would permit her to apportion any part of the death benefits payable to her thereunder. She admits that the funds in question were paid to her "solely and exclusively under the terms of (the insurance) contracts and none other." Plaintiff claims no privity to Stratford's Trust Indenture, and asserts that neither she nor Massachusetts Mutual is to be bound by the terms of that instrument. What is hereinafter said will demonstrate that plaintiff falls into error in making such a broad contention under the realities existing in this case.

The insurance policies here in question are Retirement Income Policies having a nature of combined ordinary life insurance and an endowment. They provide for the payment of regular premiums, slightly higher than those of ordinary life contracts, and give protection for a designated amount of life insurance during the lifetime of the insured. Upon arriving at age sixty-five (65), the insured is given the option of taking a fully paid up policy in the principal sum, a regular life contract in a larger sum, or receiving a pension for life. By the provisions of Stratford's Trust Agreement to which these policies were geared, the insured named in the policies, at the time of his death had the right to designate, change and successively change the death beneficiary of such policies. The power so to do was to be exercised through the Pension Committee and the Trustee of the Pension Trust. The right to change and successively change the beneficiary in said policies was specifically reserved by the terms of the policies themselves. Such right was geared to the Pension Trust Plan by the Settlement Agreement attached to each of the policies, reading in part as follows:

"All rights, privileges, benefits, options and elections granted to or conferred upon the insured by the policy are hereby vested solely in the Union National Bank in Kansas City, of Kansas City Missouri, as trustee, or its successor in trust, in accordance with the Stratford Engineering Corporation Pension Trust dated November 1, 1943, and any amendments or supplements thereto, it being intended that the insured shall have no legal incidents of ownership in the policy.

\*  \*  \*  \*  \*  \*

"The right is hereby reserved to the said trustee or its successor in trust, during the lifetime of the insured, to successively modify or revoke the settlement provisions under said policy and to change and successively change to any beneficiary, with the assent of the Insurance Company."

To say that plaintiff's decedent had no "power of ownership" in the policies in question, in light of the above provisions of the policies is to close one's eyes to reality and is contrary to the mandate of Section 811(g)(2)(B), supra. Statements, even studiously made, that an employee had no right of ownership in these policies is not conclusive or controlling. The right reserved in decedent to change and successively change the beneficiary of the death benefits payable under the Retirement Income Policies, was capable of being exercised by plaintiff's decedent in conjunction with the Pension Committee and the Trustee. Such a right is sufficient *indicium* of ownership under Section 811(g)(2)(B), supra, to require that the entire proceeds of the policies be includable in his gross estate for estate tax purposes. (cf.) Commissioner of Internal Revenue v. Karagheusian's Estate, 2 Cir., 1956, 233 F.2d 197; Singer v. Shaughnessy, 2 Cir., 1952, 198 F.2d 178; Bodell v. C. I. R., 1 Cir., 1943, 138 F.2d 553, 150 A.L.R. 1262 (involving an endowment policy); MacManus' Estate v. C. I. R., 6 Cir., 1949, 172 F.2d 697; Caldwell v. Jordan, D.C.Ala., 119 F.Supp. 66, and cases therein cited.

In light of plaintiff's contention that the funds in question were paid to her solely and exclusively under the terms of these Retirement Income Contracts, we need not concern ourselves with the other proposition asserted by her, that the "reserve fund" actuarily established by Massachusetts Mutual to meet the retirement annuity that might have been paid to her decedent had he lived to retirement age represents the amount of deferred compensation paid by Stratford to the Trustee for the benefit of her decedent. The policies by their terms made no provision for the establishment of a "reserve fund" equal to any deferred compensation paid by Stratford to the Trustee for the benefit of plaintiff's decedent. The Pension Trust Plan did not require Massachusetts Mutual to establish any such fund.

What Massachusetts Mutual may have done, for accounting or actuarial purposes as a consequence of its issuance of these "Retirement Income Policies," cannot in any respect change its primary obligations under said policies, or affect any estate tax liability on the proceeds thereof. Seemingly, the only time any consideration might have been required to be given to a relation between deferred compensation paid to plaintiff's decedent and any proceeds payable under the terms of the policies here in question, would have been as and if plaintiff's decedent had reached retirement age and the "retirement benefits" payable under these policies had been made to the Pension Trustee. That time never came into existence. Manifestly, it is superfluous to dissertate or speculate thereon under the realities of the present situation. It is sufficient to say the plaintiff did not, under the circumstances here, receive any deferred compensation due or payable to her decedent. Upon the death of Joe Altshuler, the right of the Trustee to receive retirement income payments under the policies in question ceased and the death benefits payable thereunder became a determined fact. Deferred compensation as here considered would have been paid to plaintiff's decedent under the Pension Plan only after Massachusetts Mutual had made retirement payments to the Trustee. Plaintiff says that she, as "death beneficiary" under the policies in question, had no privity to the Pension Plan Trust Indenture. That is true; but her decedent, the Pension Committee, and Massachusetts Mutual were in privity to such indenture and at the time of his death, because of such privity, plaintiff's decedent possessed the right to change and successively change the beneficiary named in the policies of insurance in question. What plaintiff received under these policies was death benefits the full amount of which can only be legally considered as tantamount to straight life insurance. The total amount so received is to be included in the gross assets of her decedent's estate because of Section 811(g)(2)(B), supra.

That plaintiff has previously paid income taxes on a part of the proceeds she has received from Massachusetts Mutual as a consequence of the policies in question, cannot be considered by this Court under the issues joined. Criteria determinative of income tax liability are not necessarily determinative of estate tax liability under I.R.C. There is no claim before this Court for refund of income taxes inadvertently paid by plaintiff, refund of which might be claimed.

In light of the foregoing, plaintiff's complaint should be dismissed, with prejudice.

It is so ordered.