Estate of Howard F. Infante, Deceased, Marilyn B. Infante, Executor v. Commissioner.
Estate of Infante v. Commissioner
Docket No. 4761-68.
United States Tax Court
T.C. Memo 1970-206; 1970 Tax Ct. Memo LEXIS 151; 29 T.C.M. (CCH) 903; T.C.M. (RIA) 70206; July 22, 1970, Filed *151 Held: Insurance proceeds from life insurance policies not includable in decedent's gross estate because he lacked "incidents of ownership" in said policy within the meaning of sec. 2042, I.R.C. 1954. Paul A. Teschner, 69 W. Washington St., Chicago, Ill., for the petitioner. Seymour I. Sherman, for the respondent. QUEALY
Memorandum Opinion QUEALY, Judge: The respondent determined a deficiency in the Federal estate tax of the Estate of Howard F. Infante, deceased, in the amount of $7,396.04. The petitioner is the executrix of the estate. The only issue presented for decision is whether the proceeds of certain policies of life insurance on the life of the decedent, designating his partner as beneficiary and *152 owner, are includable in the computation of the gross estate under section 2042. [1]
An additional question as to the includability of accidental death benefit claims under the same policies has been resolved by agreement of the parties that such includability or nonincludability will follow the decision of the court with respect to the includability of the face amount of the policies and with further agreement as to the precise amount, if any, includable. The facts have been stipulated. The stipulation of facts and exhibits thereto are incorporated herein by this reference. Howard F. Infante (the "decedent") died a resident of Illinois on March 6, 1965. His widow, Marilyn B. Infante (the "petitioner"), has served as the executrix of his estate at all pertinent times. An original and amended estate tax returns were filed with the district director of internal revenue at Chicago, Illinois. At the time of his death and for a substantial period prior thereto, the decedent and William Eaton ("Eaton") were equal partners in a partnership known as Central Photo-Engraving *153 Co. in Chicago, Illinois, pursuant to a series of written partnership articles or agreements. The last such document, which remained in effect until the date of decedent's death, is dated March 12, 1964 and provided, in pertinent part, as follows: 904 ARTICLE IX Death 1. The life of Eaton shall be insured by Infante in the sum of $55,000 and the life of Infante shall be insured by Eaton in the sum of $55,000 in life insurance companies authorized to do business in the State of Illinois. Each partner shall pay all premims due on the policy or policies of insurance taken out by him and shall exhibit to the other partner proof of such payment whenever same is demanded, the aforesaid policies of insurance are listed and described in Exhibit B, attached hereto and made a part hereof. The partners may by agreement from time to time obtain additional life insurance coverage hereunder; an amended Exhibit B shall be executed each time additional insurance is obtained. 2. Each of the partners shall be the sole owner of the policy or policies obtained by him on the life of the other partner and the death benefit under each policy shall be payable to the owner thereof; so long as *154 this agreement remains in force and prior to the death of either of the partners, neither partner will borrow against or surrender the policy or policies which he owns for the purpose of this agreement, or change the beneficiary or make settlement thereof without the consent of the other partner hereto. 3. Upon the death of a partner, the partner who survives shall purchase, and the legal representatives of the estate of the deceased partner shall sell and transfer to the surviving partner, the interest of the deceased partner in the partnership at a price to be based upon the value of the interest of the deceased partner in the partnership determined as hereinafter provided; the partner who survives shall collect the proceeds of the policy or policies on the life of the deceased partner and shall use same for the purposes of this agreement. Pursuant to the foregoing provisions, and in accordance with an oral agreement between decedent and Eaton that a larger amount of insurance than the amount of $55,000 would be in the best interests of the business, each partner insured the life of the other in the total amount of $80,000 in the manner hereinafter described. On October 18, 1956 the *155 Prudential Life Insurance Co. of America ("Prudential") had issued two polices in the face amount of $30,000, each one insuring the life of one of the partners. The partnership was initially the owner and beneficiary of both polices, which were identical in all material respects. However, by riders dated January 3, 1964 each partner was named in lieu of the partnership as owner and beneficiary of the policy on the life of the other. The riders were also identical in all material respects and gave all incidents of ownership and control to the person specified as owner. On November 4, 1964 Prudential issued policies insuring the life of each of the partners in the amount of $50,000 with each policy naming the other partner as owner and beneficiary. The two policies were identical in all material respects giving all incidents of ownership and control to the person specified as owner of the policy. Both of the policies which insured the life of the decedent included accidental death provisions in the respective amounts of $30,000 and $100,000. Following decedent's death, Prudential paid Eaton under the two policies held by him on the life of the decedent the face amounts of insurance *156 totaling $80,000. Eaton's claim for the accidental death benefits on these two policies was disputed but eventually settled on January 15, 1968 with Eaton receiving $45,500. On March 6, 1965 the executrix of decedent's estate and Eaton entered into a full and final resolution of their respective financial interests, effective as of that date, under which all interests of the decedent and his estate in the partnership were transferred to Eaton. Under the terms of that agreement, the value of decedent's partnership interest was established at $55,000 and the amount of his excess withdrawal, which the decedent had made during his lifetime and owned to the surviving partner, Eaton, was estabilshed at $8,550.68. The agreement further provided that the surviving partner, Eaton, would purchase from the petitioner for $2,928.07 the two policies upon the life of Eaton which had been owned by decedent before his death. On August 24, 1964 the petitioner, as executrix, received from Eaton the amount of $49,377.39 in full payment of all amounts owing by Eaton pursuant to the partnership agreement and the agreement dated as of March 6, 1965. The amount was computed as follows: Item No.
Item
Amount
1
Central Photo-Engraving Co. In- terest in Partnership
$55,000.00
Less Amount of Excess With- drawals by Decedent 8,550.68
$46,449.32
2
Prudential Life Insurance Co. Policies Nos. 29143612 and 29737281 on the life of William Eaton $ 2,928.07
Total $49,377.39
*157 905 The correct total cash surrender value of the two policies on Eaton's life was actually $3,450.69, and it is this amount which was included in the computation of decedent's gross estate. The estate tax return and the amended estate tax return filed by petitioner included the decedent's partnership interest at a value of $55,000, claimed as a debt of the estate $8,550.68 representing decedent's over-withdrawals, and did not include any amount with respect to the policies of insurance on decedent's life held by Eaton in accordance with the partnership agreement. Furthermore, no amount was included, either in the original or amended estate tax returns, with respect to the accidental death provisions of those policies. On July 5, 1968 a notice of deficiency was mailed to the petitioner which determined a deficiency in estate taxes of $7,396.04. In arriving at that amount respondent included in the estate the amount of $80,000, which represented the value of the policies on decedent's life held by Eaton, and the amount of $45,500, which represented the value of the accidental death benefits ultimately paid under the policies. He also eliminated the amount of $55,000, which *158 had been included as the value of decedent's partnership interest, and disallowed the debt claim of $8,550.68. The parties have agreed that, if the court holds that respondent erred in the inclusion of the proceeds of the two policies noted, the value of decedent's partnership interest is includable as an asset of the estate and should be restored thereto in the net amount of $46,449.32 (the amount of $55,000 less decedent's over-withdrawals of $8,550.68). The parties have also agreed that, if the court holds that respondent correctly included the proceeds of the foregoing policies, then the value of the partnership interest was properly eliminated as an asset of the estate and should not be restored, and the indebtedness deduction of $8,550.68 is not allowable. With respect to the claims under the accidental death provisions of the policies in controversy herein, no amount has been included in the computation of the gross estate either in the original or amended returns. In the statutory notice of deficiency respondent included the amount of $45,500 on account of such claims in the computation of the gross estate. The parties have agreed that the includability or nonincludability *159 of the value of such accidental death claims is dependent upon the holding of the court with respect to includability or nonincludability of the face amount of such policies. The parties have also agreed that, if the court determines that the face amounts of those policies are includable in decedent's gross estate, then the accidental death claims will be includable in the total amount of $45,500. In this case two partners each took out a policy of life insurance on the life of his partner, the purpose being to provide funds in order that the surviving partner could purchase the partnership interest of the deceased partner. Consistent with that purpose, the partnership agreement required that the owner-beneficiary of the policy use the proceeds of the policy to purchase the deceased partner's interest. The agreement also provided that the owner-beneficiary could not change the terms of the policy without the consent of the insured. The respondent contends that the power established by the partnership agreement to consent to changes in the policy terms gave the insured (decedent) possession of an "incident of ownership" within the meaning of *160 section 2042(2), thus requiring inclusion of the insurance proceeds in decedent's gross estate. That section provides, inter alia, that the value of the gross estate shall include the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. If we look to the terms of the policy itself, the insured did not possess any of the "incidents of ownership." The veto right held by the insured derived solely from the partnership agreement. Generally, the "policy facts" control despite contrary or collateral understandings or agreements. United States v. Rhode Island Hospital Trust Company, 355 F. 2d 7 (C.A. 1, 1966), vacating 241 F. Supp. 586 (D.R.I. 1965); Cockrill v. O'Hara, 906 302 F. Supp. 1365 (1969), and Tom J. Kearns, Jr., 185 Ct. Cl. 227 (1968), 399 F. 2d 226 (1968) (interpreting) *161 Commissioner v. Noel Estate, 380 U.S. 678 (1965); and Estate of John C. Morrow, 19 T.C. 1068 (1953). Respondent, however, argues that the cases which have given rise to the "policy facts" doctrine involved policies expressly conferring "incidents of ownership" which the courts have not allowed to be negated by collateral documents or agreements, and that the rule has never prevented the use of such documents or agreements to show that a decedent in fact possessed any such incidents, citing Commissioner v. Karagheusian's Estate, 233 F. 2d 197 (C.A. 2, 1956); Commissioner v. Treganowan, 183 F. 2d 288 (C.A. 2, 1950); Altshuler v. United States, 169 F. Supp. 456 (W.D. Mo. 1958); and Bank of New York v. United States, 115 F. Supp. 375, 385 (D.C. N. Y. 1953). While we do not believe that the policy facts should control in all situations, the cases cited by respondent in support of his argument can be distinguished from the one at hand. In the Altshuler case retirement income policies were issued to the decedent-insured pursuant to a pension trust agreement. The court, in holding that decedent possessed *162 an "incident of ownership" (the power to change the beneficiary) sufficient to bring the insurance proceeds within the decedent's gross estate under 2042(2), did not find that a collateral agreement (the pension trust) established the "incident of ownership." Rather, the court found that the "incident of ownership" was given to decedent by the "policy facts" (169 F. Supp. 456 at 459): * * * By the provisions of the Stratford's Trust Agreement to which the policies were geared, the insured named in the policies, at the time of his death, had the right to designate, change, and successively change the death beneficiary to such policies. * * * The right to change and successfully change the beneficiary in said policies was specifically reserved by the terms of the policies themselves. * * * To say that plaintiff's decedent had no "power of ownership" in the policies in question, in light of the above provisions of the policies, is to close one's eyes to reality * * *. In the Bank of New York case, the decedent endorsed seven insurance policies on his life so as to conform the provisions thereof to the requirements of a separation agreement. The decedent, by his endorsement, *163 waived his exclusive right to change the primary beneficiary and agreed to exercise it only with the consent of his wife. In the court's view, this joint power was sufficient to give decedent an "incident of ownership." In that case the collateral contract (the separation agreement) only required decedent to modify existing policy facts so that he would share jointly with his wife an "incident of ownership" in the policy which had previously been exclusively his under the terms of the policy. Contrary to the present situation, it did not in and of itself create an "incident of ownership" which was not initially found in the policy. Furthermore, the opinion in the Bank of New York case also reveals that, with respect to three of the policies, the "policy facts" themselves gave the decedent certain "incidents of ownership" (115 F. Supp. 375 at 381): * * * The face of the policy provided that if no beneficiary survived the deceased, any proceeds due were to be paid to the executors, administrators or assigns of the insured unless he directed otherwise. In Commissioner v. Treganowan, supra, the court also found that the "policy facts" gave the decedent *164 an "incident of ownership." In that case the court found that a stock exchange death benefit plan was insurance. The plan gave the member the power to sell his membership and defeat the insurance program. The court analogized that power with the lifetime power of a decedent to cash in a normal life insurance policy and found it to be an "incident of ownership" within the meaning of the statute. Finally, in Commissioner v. Karagheusian's Estate, supra, the decedent's wife executed an absolute assignment of a policy she owned on decedent's life to a trust. She retained, however, the right to amend, modify or revoke the trust with the consent of the decedent and their daughter or the survivor. Decedent had no direct ownership interest in the policy and held none of the powers granted by the terms 907 of the policy itself. His veto power derived exclusively from the trust instrument. While the "incident of ownership" was created exclusively by the collateral contract (the trust agreement), the contract substantially impinged upon the terms of the policy itself. Through the trust, and in conjunction with his wife, he could have exercised all rights of ownership. In *165 addition, there were no restrictions on the decedent as to the purposes for which he could have used the proceeds of the funds. Hence, through a merely formalistic change of ownership, decedent was able to reserve all rights of ownersip without being the owner of record. The court found the decedent's power to be an "incident of ownership" in the policy for purposes of 2042(2). In reaching this conclusion, the court analogized the trust situation to the example in section 20.2042-1(c)(2), Estate Tax Regs., [2] of indirect ownership of a policy through a corporation as an "incident of ownership" and held that the decedent had obtained an "incident of ownership" (his veto power) through his indirect ownership of the policy. (233 F. 2d 197, at 200): * * * The regulation quoted above [referring to the predecessor of section 20.2042-1(c)(2), Estate Tax Regs., footnoted above] indicates that "incident of ownership" is not to be confined to ownership in any technical legal sense, and the example of indirect ownership through a corporation is analogous to the situation here. The decedent, acting with his wife and daughter, had the power at any time until his death to determine *166 the ultimate distribution of the insurance proceeds. This power was an incident of ownership * * * and the entire proceeds of the policy were therefore includible in the decedent's gross estate. [Citations omitted.] To hold otherwise would be to sanction tax avoidance by means of insubstantial alterations in the forms of ownership. *167 In the case before us ownership of the policy was vested solely in decedent's partner. Decedent could not, in conjunction with other trustees or persons, exercise all of the "incidents of ownership" of the policy in an unrestricted manner. The decedent was given a single "incident of ownership" (the veto power) by a collateral contract (the partnership agreement) for the sole purpose of insuring that the proceeds of the policy would be available in accordance with the agreement between the partners that the survivor should purchase the interest of the deceased partner. This does not impinge upon the policy itself. The purpose of the insurance was to provide each partner with funds to purchase the partnership interest of the first deceased. Pursuant to that purpose, the partnership contract required each partner to insure the life of the other and obligated him to use the insurance proceeds to purchase the interest of the deceased partner. The veto power given by the partnership agreement to each partner over the exercise of the "incidents of ownership" of the policy held by the other was intended to insure that neither owner-beneficiary would take action with respect to the policy *168 which was contrary to the agreement. Hence, each partner was obligated by contract to exercise his policy "incidents of ownership" and his veto power in a manner consistent with the agreement. By so obligating themselves, each gave up the right to any of the economic benefits of the policy except those provided for in the partnership agreement. Each also gave up any right to control the flow of economic benefits for any purpose other than the one specified in the agreement. If either partner had acted to violate the agreement, the other would have had a valid cause of action against him on the contract. On this basis, restrictions of the type utilized in this case, which are included in the partnership agreement to insure that funds are available for the purchase of a deceased partner's interest, should not form a basis for the inclusion of the policy in the estate of the decedent where the decedent does not otherwise possess any "incidents of ownership" under the terms of the policy itself. We also do not consider this an appropriate case for the application of the indirect ownership doctrine. Ownership of the 908 policy is not vested in an impersonal entity which the decedent *169 controls and which can be disregarded as a form of indirect ownership. Here, ownership is vested directly in the decedent's partner and such ownership cannot be ignored merely because it must be exercised with the consent of the decedent. Even assuming that the policy and partnership agreement must be read together, and recognizing that decedent's veto power constitutes an "incident of ownership" (see e.g. Commissioner v. Karagheusian's Estate, supra; United States v. Rhode Island Hospital Trust Company, supra; Estate of Louis Goldstein, et al, 129 Ct. Cl. 264, 122 F. Supp. 677 (1954), certiorari denied 348 U.S. 942 (1955); and Estate of Myron Selznick, 15 T.C. 716 (1950), affd. per curiam, 195 F. 2d 735 (C.A. 9, 1952)), to include the proceeds of the insurance in the estate of the insured in this instance would be an unwarranted extension of the statute. In Estate of Bert L. Fuchs, 47 T.C. 199 (1966), the decedent retained full powers of ownership over an insurance policy on his life. The policy was subject to a partnership agreement whereby decedent and his two partners had funded *170 a partnership purchase agreement by life insurance policies on the lives of the partners with the other partners named as beneficiaries. In the course of finding that the insured did not possess sufficient power with respect to the policy to bring the insurance proceeds into his gross estate, we said (47 T.C. 199, 205-206): * * * In the instant case the existence of the partners' agreement established in John and Forrest an irrevocable right vis-a-vis decedent that they remain the beneficiaries of and obtain any economic benefit from the Fuchs and Pflasterer policies, respectively. The rights possessed by John and Forrest were not meaningless but required decedent to deal with the policies in terms of the partners' agreement. * * * Sec. 20.2042-1(c)(2), Estate Tax Regs., further states: "Generally speaking, the term ["incidents of ownership"] has reference to the right of the insured or his estate to the economic benefits of the policy. * * *" Here, decedent had no right to any economic benefits flowing from the policies. The partners' agreement prohibited decedent from *171 using or disposing of the Fuchs or Pflasterer policies as to receive economic benefit therefrom or to procure any other satisfactions which are of economic worth. * * * If decedent had acted to violate the terms of the partners' agreement by changing the beneficiary on the Fuchs or Pflasterer policies, John or Forrest would have had a valid claim against decedent's estate * * *. In the case before us, where the decedent held only the power to prevent a change of beneficiary by the owner-beneficiary of the policy, the rationale of the Fuchs case is clearly applicable. For the reasons stated, we hold that the decedent did not possess an "incident of ownership" in the insurance policies on his life and that the respondent erred in including them in his gross estate. In accordance with this decision, the proceeds of insurance shall be excluded from decedent's gross estate, and pursuant to the agreement of the parties, the value of decedent's partnership interest shall be restored to the gross estate in the net amount of $46,449.32. An additional question as to the includability of the accidental death benefit claims under the same policies was resolved by an agreement between the *172 parties that includability or nonincludability would follow the holding of the court as to the includability of the face amount of the policies. We have found that the face amounts are not includable in the decedent's gross estate. Consequently, in accordance with the agreement of the parties, the proceeds of the accidental death benefit claims are also not includable. Decision will be entered under Rule 50. *
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Sec. 20.2042-1(c)(2), Estate Tax Regs., provides: (c) Receivable by other beneficiaries. * * * (2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.↩
*. By Official Tax Court Order, dated 8/19/70 and signed by Judge Quealy↩, this sentence was changed from "Decision will be entered for the petitioners" to read as above. - CCH.