ESTATE OF ARTHUR J. O'CONNOR, DECEASED, FLORENCE M. O'CONNOR, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4073–67. Filed May 12, 1970.

*James A. Glascock, Jr.* and *Edward J. P. Zimmerman,* for the petitioner.
*Agatha L. Vorsanger* and *David W. Winters,* for the respondent.

---

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency of $170,-374.35 in the estate tax of the Estate of Arthur J. O'Connor. The only issue remaining for decision is whether four trusts created by the decedent and his wife are includable in his gross estate under section 2036 or section 2038, I.R.C. 1954. The facts have been stipulated.

The decedent, Arthur J. O'Connor (O'Connor), died testate on September 20, 1962, a resident of Scarborough, N.Y. His wife, Florence M. O'Connor, was appointed executrix of his will. She resided in Scarborough, N.Y., when the petition in these proceedings was filed. O'Connor's estate tax return was filed with the district director of internal revenue for the Manhattan district of New York, and on the return the gross estate was valued as of the date of death.

On January 25, 1955, the decedent and his wife executed a single trust indenture creating four substantially identical trusts for the benefit of their four children, Arthur Joseph O'Connor, Jr. (then age 11), Mary Ellen O'Connor (age 10), Kathleen O' Connor (age 8), and Robert Paul O'Connor (then 10 days old), and naming O'Connor as the trustee. By the terms of the indenture O'Connor and his wife, as grantors, delivered, assigned, and conveyed to O'Connor as trustee and his successor trustees the sum of $79,000. He actually contributed all the principal of the trusts, however, and served as trustee until his death in 1962.

Article First of the trust indenture provided as follows:

TRUST NO. 1

FIRST: The trustee shall hold, manage, invest and reinvest nineteen seventy-ninths (19/79) of the total trust funds in the manner hereinafter provided, collect and receive the income therefrom, pay therefrom all proper expenses, taxes and charges, in his discretion expend for the benefit of said Arthur Joseph O'Connor, Jr. (born May 4, 1943) any balance of income or any principal thereof, and accumulate and add to principal any income remaining until said Arthur Joseph O' Connor, Jr. shall attain the age of twenty-one (21) years. When said Arthur Joseph O'Connor, Jr. shall attain the age of twenty-one (21) years, the Trustee shall thereupon pay over and distribute to him outright, as his absolute property, any principal and income, including accumulated income, then held hereunder. If said Arthur Joseph O'Connor, Jr. shall die before attaining the age of twenty-one (21) years, the Trustee shall on his death pay over and distribute to his estate any principal or income, including accumulated income, then held hereunder.

The following three articles of the trust indenture were substantially identical to article First, except that each named a different child as beneficiary, and in one instance the trust corpus consisted of 22/79 of the total trust funds.

The remaining provisions of the trust indenture governed all four trusts. They provided as follows:

FIFTH: The Trustee is specifically authorized and empowered in his sole discretion to retain any and all securities or assets constituting the original trusts without liability for decrease of value thereof and to hold uninvested any sum or sums of money as he may at any time deem appropriate or advisable. The Trustee is fully authorized and empowered to sell any and all property, securities or assets at any time constituting or held by the trust funds and to assign, convey and deliver the same to the purchasers thereof without liability on the part of such purchasers as to the application of the purchase moneys. The Trustee is further authorized and empowered to invest the proceeds of any such sales and any other money available for investment in such stocks, bonds, notes, securities and/or property as in his sole discretion he may deem to be appropriate and advisable for the trusts and in making investments the Trustee shall not be restricted or limited by the laws or rules of the State of New York or elsewhere applicable to trust investments. The Trustee is further authorized and empowered to register any securities or other property at any time held hereunder in his name as Trustee hereunder or in his individual name or in the name or names of one or more of his nominees, with or without indicating the trust character of the securities or other property so registered; to hold any securities in bearer form so as to be transferable by delivery; to employ investment counsel, attorneys, accountants, bookkeepers, stenographers and agents, to carry property in custodian accounts, and to defray the expense of all such measures out of principal or income as he shall deem proper. The Trustee is further authorized and empowered to join in and participate in any reorganization, consolidation, merger, dissolution or capital adjustment of any corporation whose securities shall be held by the trusts and to receive substituted or exchanged securities issued by said corporation in place of the securities held in the trusts and to effect any subscriptions or exchanges or to do or perform any other act or thing which he may deem advisable or necessary in connection with the trust investments. The Trustee is also authorized and empowered in his discretion to borrow money in the name of and on behalf of the trusts and to execute in connection therewith notes or instruments and to pledge and hypothecate such trust assets or property for this purpose as he may deem advisable.

SIXTH: Neither the principal of the trust funds hereby created nor the income resulting therefrom while in the hands of the Trustee shall be subject to any conveyance, anticipation, transfer, assignment or pledge of any beneficiary and shall not be subject to any claim or attachment by any creditor or other claimant upon any beneficiary through legal process or otherwise.

SEVENTH: The trusts hereby created are irrevocable and under no circumstances shall any part of the prinicpal or income therefrom revert to the Grantors or to their estates or be used or applied directly or indirectly for the benefit of the Grantors or be used or applied to met or relieve the Grantors' legal obligations to support their dependents

EIGHTH: On the death or inability to serve of the Trustee, said Florence M. O'Connor shall become Successor Trustee, and on her death or inability to serve, such person shall become Successor Trustee as shall have been designated by said Arthur J. O'Connor by a written instrument or by his last will and testament or, failing such designation by him, such person as shall have been designated by said Florence M. O'Connor by a written instrument or by her last will and testament. Any Successor Trustee so named or designated shall succeed to and have all the powers and authority herein bestowed upon the original Trustee.

NINTH: The Grantors or either of them and/or any other person may from time to time add to the trust funds by devising, bequeathing, assigning, transferring, conveying, delivering or making payable to the Trustee cash, securities or

other property and all such additions shall be held by the Trustee subject to the terms of the trusts.

TENTH: The Trustee shall have the power to determine and designate whether expenses and other disbursements in connection with the maintenance, improvement and protection of any property or asset held by the trust funds shall be charged against principal or income and such determination shall be conclusive upon all persons.

At the time the trusts were created and thereafter until his death O'Connor was a man of considerable wealth, as indicated by the more than $3,500,000 gross estate reported on his estate tax return. During his service as trustee, O'Connor made no payments of trust principal or trust income to or for the benefit of any trust beneficiary. He accumulated all the income of each trust and added it to trust principal.

O'Connor died on September 20, 1962. At that time the fair market value of the principal of each trust was as follows:

| Trust for benefit of— | Fair market value |
|---|---|
| Arthur Joseph O'Connor, Jr. | $35,479.29 |
| Mary Ellen O'Connor | 35,509.81 |
| Kathleen O'Connor | 35,220.14 |
| Robert Paul O'Connor | 39,154.48 |

None of the trust beneficiaries had attained the age of 21 at the time of their father's death. The four trusts were not included in O'Connor's gross estate reported on his estate tax return, although their existence was disclosed in a schedule attached to the return. The estate tax return reported a gross estate of $3,594,783.03 and a taxable estate of $1,473,000.

The Commissioner determined that the principal of each of the trusts was includable in the gross estate under the provisions of sections 2036 and 2038, I.R.C. 1954, and his notice of deficiency included the trusts in the gross estate at their fair market values at the time of death.

The Commissioner contends that the trustee's powers under the trust indenture were so extensive as to require inclusion of the principal of each trust in O'Connor's gross estate pursuant to the provisions of section 2036(a)(2)[1] and section 2038(a)(1),[2] I.R.C. 1954. In re-

---

[1] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

\* \* \* \* \* \* \*

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[2] SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

(1) Transfers after June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an

sponse, the taxpayer argues that the provisions of article Seventh of the indenture restricted O'Connor's powers sufficiently to place the trust properties beyond the reach of those sections.

The parties agree that were it not for article Seventh the principal of each trust would be includable in O'Connor's gross estate, and the case law makes this abundantly clear. It is well settled that section 2036(a)(2) requires inclusion of both the original principal and the accumulated income of an irrevocable trust in the settlor's gross estate where at the time of his death the settlor retains the discretionary power either to distribute trust income to income beneficiaries or to accumulate such income and add it to principal; the power to deny to the trust beneficiaries the privilege of immediate enjoyment and to condition their enjoyment upon their surviving the termination of the trust has been considered to be of sufficient substance to qualify as a power to "designate" within the meaning of section 2036(a)(2). *United States* v. *O'Malley*, 383 U.S. 627; *Industrial Trust Co.* v. *Commissioner*, 165 F. 2d 142 (C.A. 1), affirming in this respect *Estate of Milton J. Budlong*, 7 T.C. 756. See also sec. 20.2036–1(b)(3), Estate Tax Regs. Similarly, it is also established that section 2038(a)(1) requires inclusion of the principal of an irrevocable trust in the settlor's gross estate where at the time of his death he retains the discretionary power to terminate the trust and distribute the principal and accumulated income to the trust beneficiaries; the settlor's power to terminate contingencies upon which the beneficiaries' rights to enjoyment of the trust principal depend has been considered a power to "alter, amend, revoke, or terminate" within the meaning of section 2038(a)(1). *Lober* v. *United States*, 346 U.S. 335; *Commissioner* v. *Estate of Holmes*, 326 U.S. 480; *Estate of Russell Harrison Varian*, 47 T.C. 34, 37–44, affirmed 396 F. 2d 753 (C.A. 9), certiorari denied 393 U.S. 962. See also sec. 20.2038–1(a), Estate Tax Regs.; cf. *United States* v. *O'Malley*, 383 U.S. 627, 633 fn. 5.

Each of the first four articles of the O'Connor trust indenture gave O'Connor, as trustee, the discretion to expend trust principal and income for the benefit of the trust beneficiary or to accumulate trust income and add it to principal until the beneficiary attained the age of 21. Thus, unless modified by subsequent provisions in the indenture, the powers conferred by the first four articles require the trusts to be included in O'Connor's gross estate pursuant to sections 2036(a)(2) and 2038(a)(1). However, the taxpayer contends that article Seventh

---

adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

of the trust indenture rendered "illusory" O'Connor's power—purportedly conferred by the first four articles of the indenture—to expend trust income and principal for the benefit of each beneficiary, and that therefore neither section 2036(a)(2) nor section 2038(a)(1) requires inclusion of the trusts in O'Connor's gross estate. This the Commissioner disputes, and the controversy between the parties thus concerns only the tax consequences of article Seventh of the trust indenture.

The taxpayer argues first that by prohibiting the use of any part of the principal or income of the trusts to relieve O'Connor's support obligations, article Seventh effectively neutralized the powers purportedly conferred upon him by the first four articles of the indenture. The taxpayer reasons that since New York law measures the extent of a parent's support obligation with reference to his "station in life," and since O'Connor was a "very wealthy" man, any payments made for the benefit of his children while he was still alive would necessarily have relieved his support obligations and were therefore proscribed by article Seventh. In essence, the taxpayer's argument is that for a father in O'Connor's financial position, no expenditure for the monetary benefit of one of his children could exceed his obligation to support that child, and that therefore article Seventh prohibited any payments by O'Connor under the trust indenture. We disagree.

To be sure, since New York law provides that a father's support obligation is measured by his "station in life," O'Connor's support obligations were extensive. See N.Y. Dom. Rel. Law sec. 32(2); *De Brauwere* v. *De Brauwere*, 203 N.Y. 460, 464, 96 N.E. 722; *Garlock* v. *Garlock*, 279 N.Y. 337, 340, 18 N.E. 2d 521, 522.[3] However, the New York courts have consistently held that the authority to make expenditures of trust property for the "benefit" of an individual is far more extensive than the authority to make expenditures for his support. *Lenzner* v. *Falk*, 68 N.Y.S. 2d 699, 702–703 (N.Y. Co. Sup. Ct.); *In re Emmons' Will*, 165 Misc. 192, 195, 300 N.Y.S. 580, 584 (Broome Co. Surr. Ct.) (" 'Benefit,' as used in a will directing payment of income to one for his own use and benefit of property, is a much broader word than 'support,' and has no such limited meaning as the word 'support' "); *In re Rachlin's Will*, 133 N.Y.S. 2d 151, 152 (Queen's Co. Surr. Ct.) ("The word 'benefit' is more comprehensive than the word 'support' and is 'anything that works to the advantage or gain of the recipient' ").

The first four articles of the trust indenture authorized O'Connor, as trustee, to expend the income and principal of the trusts "for the

---

[3] Furthermore, under New York law the father's obligation may not be relieved by using the child's separate estate unless the father is unable to bear the necessary expenses. *Beardsley* v. *Hotchkiss,* 96 N.Y. 201, 219–220.

benefit of" the child beneficiaries, and we think it is clear under New York law that the authority thereby conferred permitted him to make payments in excess of his support obligations. As extensive as his support obligations may have been, they did not comprehend every payment that could possibly have benefited his children. We conclude that the provision prohibiting the use of any part of the principal or income of the trusts to relieve O'Connor's support obligations left him with authority to make substantial payments of income and principal to the trust beneficiaries and that this authority was significant enough to render the trusts includable in his gross estate pursuant to sections 2036(a)(2) and 2038(a)(1).

However, the taxpayer argues that even if expenditures could be made for something other than the beneficiaries' support, any such expenditure would be barred by article Seventh's provision that no part of the principal or income "be used or applied directly or indirectly for the benefit of the Grantors." The taxpayer urges that since all of the trust beneficiaries were O'Connor's children and since he, as trustee, decided how the trust funds were to be applied, any expenditure made for the benefit of the children would inevitably have redounded to his benefit as well—by satisfying his paternal desire to please his children. In making this argument, the taxpayer places great emphasis on the fact that "direct or indirect" benefits were proscribed by the trust provision and urges that the receipt of subjective as well as material benefits were thus forbidden to O'Connor by the indenture.

The construction proposed by the taxpayer seems inconsistent with the context of article Seventh. The other provisions of the article declare the trusts irrevocable and prohibit trust income and principal from reverting to the grantors and from being applied to meet or relieve the grantors' "legal obligations to support their dependents." Plainly, these provisions attempt to prevent the grantors from deriving real economic advantages from the trusts, and there is no suggestion anywhere in the trust indenture that the "benefit" provision has a broader purpose. To be sure, as indicated above, the New York courts have customarily defined the word "benefit" in broad terms. But that definition has not to our knowledge been extended to include subjective satisfactions. Typical is the definition relied upon by the court in *In re Emmons' Will*, 165 Misc. 192, 195, 300 N.Y.S. 580, 584:

"Benefit" * * * is thus defined in Worcester: "Advantage; gain; profit;" and its manifest signification is anything that works to the advantage or gain of the recipient. * * *

See also *In re Rachlin's Will*, 133 N.Y.S. 2d 151, 152; *Salisbury* v. *United States*, 377 F. 2d 700, 703–708 (C.A. 2) (interpreting New York law).

In arguing for a broader construction of "benefit" in this case, the taxpayer has attempted to explain the O'Connors' intentions in establishing the trusts. The taxpayer suggests that O'Connor and his wife deliberately designed the trust indenture so that article Seventh would render "illusory" the powers otherwise conferred upon O'Connor by the indenture. The taxpayer theorizes that O'Connor and his wife wanted all of the trust income to be accumulated and added to principal while the two of them were alive (and presumably had sufficient resources to care for their children), that they also wished to ensure that if they both died before their children turned 21, the successor trustees would have the power to expend income and principal for the benefit of the children, and that since article Seventh would limit the trustee's powers only as long as either O'Connor or his wife were alive, it was introduced into the indenture to achieve the foregoing purposes.

This explanation seems to us to be farfetched. Apart from the parties' stipulation that O'Connor was a "very wealthy" man, and the trust indenture itself, there is absolutely no evidence in the record to support it. Furthermore, the taxpayer would have us conclude that the O'Connors deliberately created an "illusion." But this theory fails to explain *why* they implemented their plan in such a circuitous and deceptive manner. The taxpayer's speculation as to the O'Connors' possible intentions is simply not enough to justify such an unusual and unlikely reading of article Seventh.

The problem is merely one of construing the language of article Seventh and the meaning of the word "benefit" as used therein. The fact that a taxpayer may derive "benefits" or personal "satisfactions" for certain purposes in respect of the income tax law (cf. *Burnet* v. *Wells*, 289 U.S. 670, 678; *Corliss* v. *Bowers*, 281 U.S. 376, 378; and *Helvering* v. *Horst*, 311 U.S. 112, 116–117) does not warrant a con struction of article Seventh in such manner as to render illusory, during the lifetime of the grantors, powers conferred on the trustee in article First. We think that no such unusual construtcion was intended here. Had the O'Connors intended that result it seems plain to us that they would simply have stated in article First itself that the powers in question were exercisable only by successor trustees after the deaths of the grantors. We do not accept the unnatural reading of the instrument which the taxpayer urges upon us.

We conclude that the trusts are includable in O'Connor's gross estate pursuant to sections 2036(a)(2) and 2038(a)(1).

*Decision will be entered under Rule 50.*