ESTATE OF HECTOR R. SKIFTER, DECEASED, JANET SKIFTER KELLY AND THE CHASE MANHATTAN BANK (NATIONAL ASSOCIATION), EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5958–68. Filed August 26, 1971.

---

*Archibald H. Cashion*, for the petitioners.
*Marion L. Westen*, for the respondent.

RAUM, *Judge:* The Commissioner determined a deficiency in the estate tax of the Estate of Hector R. Skifter in the amount of $53,776.77. Two issues remain for decision with respect to that deficiency: (1) Whether decedent possessed sufficient incidents of ownership in nine insurance policies on his life to render the amounts receivable by the beneficiaries under the policies includable in decedent's gross estate pursuant to section 2042(2), I.R.C. 1954; and, (2) whether the value of all the property in three trusts created by the decedent is includable in his gross estate under section 2036 or section 2038, I.R.C. 1954. The facts have been stipulated.

The decedent, Hector R. Skifter (Skifter), died testate on July 25, 1964. At the time of his death he was a resident of the Village of Flower Hill, Nassau County, N.Y. His daughter, Janet Skifter Kelley (Janet), and the Chase Manhattan Bank (now the Chase Manhattan Bank (National Association)) were appointed coexecutors of his will. When the petition herein was filed, Janet resided in Bethesda, Md., and the Chase Manhattan Bank had its principal office in New York, N.Y. Skifter's estate tax return (Form 706) was filed with the district director of internal revenue, Brooklyn, N.Y.

More than 3 years prior to his death Skifter assigned all interest in nine insurance policies on his life to his first wife, Naomi Skifter, and made her the owner of such policies. Of the nine policies, seven were fully paid and nonassessable at the time of the assignment and at the time of Skifter's death; there were no outstanding loans against any of these policies at either date. A copy of only one of these seven policies was made part of the record. Under the terms of this policy, Skifter as the owner of record originally possessed the power to assign the policy, to surrender the policy for its cash value, and to borrow against the policy. The record herein does not disclose the terms and conditions of the other six fully paid policies. With respect to the two policies which had not been fully paid, Skifter paid an annual premium in the amount of $163.20 on one policy until the date of his death, and the premiums on the other, which was a group insurance policy issued to Skifter's employer, were paid by the employer also until the date of Skifter's death. Copies of neither of these policies were included in the stipulated facts and the record does not disclose the terms and conditions of either. The parties have stipulated that

copies of the eight policies not presented to the Court were "unavailable."

Naomi Skifter died testate on December 6, 1961. Her will (dated January 13, 1956), after disposing of "all my tangible personal property except money and all my real property," provided that her residuary estate be placed in trust. The nine insurance policies thus became part of that testamentary trust. Skifter was appointed both executor of the will and trustee of the trust set up thereunder, and he acted in both capacities until his death. The will named the Chase Manhattan Bank his successor as both executor and trustee. As executor Skifter filed a New York estate tax return for Naomi's estate in which he reported a gross estate of $45,088.76, including the nine insurance policies on his life valued at $20,620.32.

Naomi's will provided that the income from the residuary trust was to be paid to their daughter, Janet, for life. Upon Janet's death "the then remaining principal of the trust" was to be paid to such persons as Janet should appoint by will. In case Janet failed to exercise her power of appointment by will (or in case Janet predeceased Naomi) a codicil (dated June 15, 1956) to Naomi's will provided that the principal (or the entire residuary estate in the event that Janet predeceased Naomi) should be distributed to Janet's issue then living, or, if there were no such issue, to Skifter. The codicil furthermore provided if Skifter "shall not be then living" that the remaining principal (or the entire residuary estate, as the case may be) should be paid in shares to other named beneficiaries.

Other provisions of Naomi's will pertaining to the residuary trust and the powers of the trustee thereunder, were as follows:

THREE: A. I authorize my Trustee in his absolute discretion, at any time and from time to time, to pay over the whole or any part of the principal of the trust created by Article TWO of this Will to any beneficiary entitled at the time of such payment to the current income from the principal so paid over whether or not any such payment shall result in the termination of the trust from which the payment is made. * * * It is my intention that any rules of trust law which may require impartiality as between income beneficiaries and remaindermen shall be disregarded, and that my Trustee shall exercise the authority herein given to him in the interests of the income beneficiaries and without regard to the interests of the remaindermen.

    *        *        *        *        *        *        *

SIX: A. * * * I authorize my Executor and also my Trustee, as the case may be, in his absolute discretion, with respect to any property, real or personal, * * *

* * * generally to exercise all such rights and powers and to do all such acts as I might do with respect to such property if I were living and the absolute owner thereof.

Pursuant to Naomi's will all nine insurance policies on Skifter's life, which he had previously assigned to her, were transferred of

record into Skifter's name as trustee of the residuary trust. An account of his transactions as executor and as trustee was prepared by the executors of Skifter's will following his death. Such account revealed that his only act as trustee, aside from receipt of the nine insurance policies, was to receive dividends on one of the insurance policies in the total amount of $168.91. As trustee he made no distributions of either income or principal. After his death, the Chase Manhattan Bank in its capacity as successor trustee collected the aggregate proceeds of the nine insurance policies, totaling $121,923.52.

Prior to his death Skifter established substantially identical "accumulation" trusts for each of his three grandchildren. Thus, on November 28, 1960, he created "accumulation" trusts for the benefit of each of his grandsons, Karl Bryan Kelley and Peter Randolph Kelley. And on March 19, 1962, he created an "accumulation" trust for the benefit of his granddaughter Lee Ann Kelley. Each of the grandchildren was under 21 years of age at the time his or her trust was created. According to the respective trust instruments, which were stipulated by the parties, Skifter funded each of the trusts for his grandsons with 100 shares of Cutler-Hammer, Inc., common stock, and the trust for his granddaughter with 200 shares of Cutler-Hammer, Inc., common stock. He named himself as the sole trustee of each of the three trusts, and named his daughter Janet and the Chase Manhattan Bank as his successors under the trusts for his grandsons, and Janet alone as his succesor under the trust for his granddaughter with the Chase Manhattan Bank to succeed Janet.

Each of the three trust instruments contained provisions substantially as follows:

1. As trustee under this Declaration of Trust, I shall hold, manage, invest and reinvest the said property and such additional property as may be added thereto pursuant to the terms hereof and shall collect and receive the income therefrom and shall pay over the income and principal as follows:

(A) During the period that * * * [the named grandchild] is under the age of twenty-one (21) years, the income, in the discretion of the trustee (whether me or a successor trustee or trustees) may either be paid to, or applied to the use of, * * * [the named grandchild], or accumulated and added to principal. * * *

(B) When and if the said * * * [named grandchild] becomes twenty-one (21) years of age, the entire income (including the entire income for the fiscal year ending on or after * * * [the named grandchild's] twenty-first birthday) shall be paid to * * * [the named grandchild] in annual or more frequent installments.

2. This Trust shall terminate when * * * [the named grandchild] attains the age of twenty-five (25) years, or sooner dies.

3. At termination of this Trust all of the principal shall be paid to * * * [the named grandchild], if he is then living. If * * * [the named grandchild] is not living, the principal shall be paid equally to the surviving issue of * * * [the named grandchild] [in the granddaughter's trust the instrument provided that

"the principal shall be paid to such person or persons from among her spouse, issue, and siblings as she may appoint, and in default of appointment" equally to her surviving issue] ; and if there is no surviving issue of * * * [the named grandchild], then to the surviving issue of my daughter JANET SKIFTER KELLEY, per stirpes; and if there is no surviving issue of JANET SKIFTER KELLEY, then to JANET SKIFTER KELLEY or her estate.

4. The trustee or trustees (whether it be me or a successor trustee or trustees) is (are) authorized at any time or from time to time to pay or apply to the use of * * * [the named grandchild] out of the principal hereof, such sum or sums as the trustee in his, her or their sole discretion may deem appropriate for such person's support, maintenance or education. [The granddaughter's trust contained the following additional sentence: "If an individual is acting as a co-trustee hereunder with a bank or trust company, he or she shall be the sole judge of whether the occasion exists for the withdrawal of principal under the provisions of this paragraph and the amount of principal to be withdrawn". The trust for Peter Randolph Kelley contained the following additional sentence: "If JANET SKIFTER KELLEY is acting as a co-trustee hereunder, she shall be the sole judge of whether the occasion exists for the withdrawal of principal under the provisions of this paragraph and the amount of principal to be withdrawn".]

5. In making payment of property, whether principal or income, to a person under the age of twenty-one (21) years or to an incompetent, or in applying property, whether principal or income, to the use of any such person under any provision of this Agreement, I, as trustee, or any successor trustee may make such payment or application by payment to such person directly or to a natural or foster parent, or to the person with whom such person shall reside, or to the guardian, committee or other legal representative, wherever appointed, of such person, and the payment to any of the foregoing shall be a full discharge of the trustee and binding in all respects upon such person.

\* \* \* \* \* \* \*

13. This Trust shall be irrevocable, and I hereby expressly waive all right and power, whether alone, jointly or in conjunction with any other person, to alter, amend, revoke or terminate this Trust in whole or in part, except with respect to the designation of a different banking institution or individual as successor co-trustee, as hereinbefore provided.

\* \* \* \* \* \* \*

15. The laws of the State of New York shall govern the construction and operation of this instrument.

The trust for Lee Ann Kelley provided, in addition, that income accumulated by the trustee pursuant to article 1(A) of the trust instrument set forth above "shall be paid to LEE ANN KELLEY when she attains age twenty-one (21); and if she dies before attaining age twenty-one, then such accumulated income shall be paid to such person or persons as she may appoint, and in default of appointment, to her estate." Like provisions were not included in either of the trusts for Skifter's grandsons. Pursuant to article 1(A) of each of those trusts accumulated income was "added to" and became a part of the "principal" of each trust.

Skifter served as trustee of each of the three trusts until his death. His only acts as trustee consisted of receiving dividends on the shares

of stock held in each trust, depositing such dividends to interest-bearing bank accounts, and paying Federal income tax on the trust income. He made no distribution of either income of principal; and, while he was trustee no property, other than the accumulations of income described above, was added to any of the trusts either by him or anyone else. At the time of Skifter's death, the corpus of the three trusts for his grandchildren consisted of the following property:

| Accumulation trust | Property | Fair market value |
|---|---|---|
| Karl Bryan Kelley | 100 shares Cutler-Hammer, Inc., common stock. | $7, 187. 50 |
| | Cash | 817. 00 |
| | Total | 8, 004. 50 |
| Peter Randolph Kelley | 100 shares Cutler-Hammer, Inc., common stock. | 7, 187. 50 |
| | Cash | 817. 00 |
| | Total | 8, 004. 50 |
| Lee Ann Kelley | 200 shares Cutler-Hammer, Inc., common stock. | 14, 375. 00 |
| | Cash | 868. 00 |
| | Total | 15, 243. 00 |

Skifter's three grandchildren were each under 21 years of age at the time of his death.

Neither the proceeds of the foregoing nine insurance policies nor the value of the property held in the foregoing three trusts created for the grandchildren were included in the gross estate in Skifter's estate tax return. The return disclosed the existence of eight of the nine insurance policies and that these eight policies were held in trust pursuant to his late wife's will. The return also disclosed the existence of the three trusts for the grandchildren. The Commissioner determined that "the decedent had incidents of ownership in the * * * [nine] life insurance policies on his life within the meaning of section 2042 of the Internal Revenue Code of 1954 and, therefore, proceeds in the amount of $121,923.52 thereof are includible in the decedent's estate." The Commissioner furthermore determined that the value of the property in the three trusts for Skifter's grandchildren was "includible in the decedent's gross estate since the decedent retained the power to accumulate or distribute income."

1. *The nine life insurance policies.*—The Commissioner relies upon section 2042(2), I.R.C. 1954, in support of his inclusion of the proceeds of the nine insurance policies in Skifter's gross estate. These

provisions, enacted in 1954, represent the latest (but perhaps not the last) statutory revision of the law relating to estate taxes in respect of life insurance. The law prior thereto, as reflected in the statutes, regulations, practice, and judicial decisions, had followed a long and tortuous path, often marked by confusion and contradiction. We need not recount that bewildering history, but it is set forth in 2 Mertens, Law of Federal Gift and Estate Taxation, ch. 17. Section 2042 of the 1954 Code now provides:

SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

(1) RECEIVABLE BY THE EXECUTOR.—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For purposes of the preceding sentence, the term "incident of ownership" includes a reversionary interest (whether arising by the express terms of the policy or other instrument or by operation of law) only if the value of such reversionary interest exceeded 5 percent of the value of the policy immediately before the death of the decedent. * * *

Where the life insurance proceeds are payable to any beneficiary (other than the insured's estate or his "executor"), the sole condition for taxability under these provisions is that insured must possess at his death "any of the incidents of ownership." *Estate of James H. Lumpkin*, 56 T.C. 815. The test under prior law that the insurance be "taken out" by the decedent or that he pay the premiums has been eliminated. The new provisions were explained by the Senate Finance Committee as follows (S. Rept. No. 1622, 83d Cong., 2d Sess., p. 124):

The proceeds of life insurance on a decedent are subjected to tax in his estate under present law if the policy is payable to the executor, if the decedent paid the premiums on the policy (in this case includible in proportion to the amount paid), or if the decedent possessed any elements of ownership in the policy at date of death.

No other property is subject to estate tax where the decedent initially purchased it and then long before his death gave away all rights to the property and to discriminate against life insurance in this regard is not justified.

The House and your committee's bill retains the present rule including life-insurance proceeds in the decedent's estate if the policy is owned by him or payable to his executor, but the premium test has been removed. To place life-insurance policies in an analogous position to other property, however, it is necessary to make the 5-percent reversionary interest rule, applicable to other property, also applicable to life insurance.

It is estimated that the change made by your committee in this provision will reduce revenues by about $25 million in the fiscal year 1955.

Thus, Congress refused to accept in its fullest form the notion that life insurance is by its very nature testamentary in character, and has

made taxability turn upon the passing of the insurance proceeds to his estate or upon the extinguishment at his death of rights ("incidents of ownership") which he possessed in the policy at the time of his death. The choice was a deliberate one, and it was recognized that the change in law would result in a substantial reduction in revenues.

Accordingly, when Skifter transferred all interest in the nine insurance policies to Naomi more than 3 years prior to his death he stripped himself of any rights therein that might have formed the basis for inclusion of the proceeds in his gross estate. So much is not disputed by the Government, and if Skifter had predeceased Naomi there is no question that the proceeds would not be includable in his gross estate. The present case arises only by reason of the fortuitous circumstance that Naomi died first, that the policies became part of a testamentary trust established under her will, that Skifter was named as trustee, and that, as trustee, he was given broad powers in respect of the corpus. But those powers could be exercised only within the framework of the trust and not for his own benefit. He still had no interest in the policies and could not effect any change as trustee that would give him any rights therein.

In view of the deliberate elimination of the payment-of-premiums test in the 1954 Code, it is a matter of indifference here that Skifter had supplied the funds with which to purchase any of the policies. The case must be viewed in the same light as though some third person, like a business partner, had paid the premiums. And it seems inconceivable to us that Congress would have intended the proceeds to be included in the insured's gross estate in such circumstances merely because the third-party owner of the policy had entrusted the insured with fiduciary powers that were exercisable only for the benefit of persons other than the insured.

The present case is thus sharply distinguishable from *Estate of Harry R. Fruehauf*, 50 T.C. 915, relied upon by the Government, where the insured-trustee's powers included the power to make changes that would be of benefit to himself. This circumstance was expressly pointed out in the concurring opinion as a limitation on the holding in that case, 50 T.C. at 926, and the decision was affirmed on that ground by the Court of Appeals, which explicitly rejected a "per se" rule that the mere powers of a fiduciary were sufficient to qualify as incidents of ownership where he could not exercise those powers for his own benefit. 427 F. 2d 80, 84–85 (C.A. 6).

Although the question before us is novel, the result that we reach finds some support in *Estate of Bert L. Fuchs*, 47 T.C. 199, and *Estate of Newcomb Carlton*, 34 T.C. 988, 966.[1] On the other hand, the Government's reliance upon *Commissioner* v. *Karagheusian's Estate*, 233 F.

---

[1] See also *Estate of Howard F. Infante,* 29 T.C.M. 903, 907.

2d 197 (C.A. 2), is, we think, misplaced. We find nothing there to indicate that the trust could not have been modified so as to benefit the insured in that case.[2]

Perhaps the most disturbing element in this case is section 20.2042–1(c) of the regulations, which provides:[3]

Sec. 20.2042–1  Proceeds of life insurance—

(c) Receivable by other beneficiaries. * * *

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meannig to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarily, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder.

\*       \*       \*       \*       \*       \*       \*

(4) A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the decedent (either alone or in conjunction with another person or persons) has the power (as trustee or otherwise) to change the beneficial ownership in the policy or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust. Moreover, assuming the decedent created the trust, such a power may result in the inclusion in the decedent's gross estate under section 2036 or 2038 of other property transferred by the decedent to the trust if, for example, the decedent has the power to surrender the insurance policy and if the income otherwise used to pay premiums on the policy would become currently payable to a beneficiary of the trust in the event that the policy were surrendered.

If (c) (2) alone were involved, it would seem clear that the naked power of a trustee to effect changes, however substantial, within the framework of the trust would not qualify as an "incident of ownership," for it states that "Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy." However, (c) (4) casts a cloud upon (c) (2), and we are not sure precisely what (c) (4) was intended to achieve. Certainly, if it were to be given its broadest reading it would seem to run counter to (c) (2), and would be plainly inconsistent with the legislative purpose. It may be that it was intended primarily to govern situations like the creation of a trust by the insured who transfers policies owned by him to the trust. The statement of the Senate Finance Committee quoted above,

---

[2] Also, although there is language in *United States v. Rhode Island Hospital Trust*, 355 F. 2d 7, 11 (C.A. 1), which superficially appears to support the Government's position, such language was used in the context of an entirely different kind of situation and we do not find that it has much persuasive force in respect of a case like the one now before us.

[3] It is puzzling to note that although the effect of these regulations was argued by the parties in *Fruehauf*, no mention thereof was made in either the opinions of this Court or the Court of Appeals.

page 1196, appears to suggest an effort to treat life insurance in the same manner as other property owned by the decedent or transferred by him during his lifetime. And since a transfer of property generally with reservations of powers by the tranferor as trustee may be sufficient to bring the property within the gross estate regardless of whether such powers may be exercised for his own benefit,[4] it would be entirely appropriate to give (c) (4) a reading that would treat insurance in the same manner.[5] In any event, we will not apply it in such manner as to be inconsistent with what we regard as the congressional purpose to exclude from the gross estate the proceeds of policies like the ones before us.

2. *The three "accumulation" trusts.*—During his lifetime Skifter established similar trusts for the benefit of each of his three grandchildren. Under the terms of the trusts he was given in his sole discretion as trustee both the power to accumulate or distribute trust income and the power to distribute the trust principal. The Commissioner contends that these discretionary powers require inclusion in Skifter's gross estate of the value of all the property in the trusts pursuant to the provisions of section 2036(a)(2)[6] and also section 2038(a)(1), I.R.C. 1954. The petitioners, on the other hand, argue that any powers the decedent had over the principal or income of these trusts were sufficiently limited by "definite external standard[s]" and that therefore the trust properties were not includable in decedent's gross estate. Cf. *Estate of Ralph Budd*, 49 T.C. 468, 474, and cases cited therein. The limiting external standards to which the petitioners refer are the provisions in article 4 of trust instruments relating to distributions of principal—that such distributions were to be "as the trustee in his * * * sole discretion may deem appropriate for * * * [the named beneficiary's] *support, maintenance or education*" (em-

---

[4] See *Porter* v. *Commissioner*, 288 U.S. 436, 443; *Florida National Bank* v. *United States*, 336 F. 2d 598, 601 (C.A. 3), certiorari denied 380 U.S. 911; *Mellon* v. *Driscoll*, 117 F. 2d 477, 478, 479 (C.A. 3), certiorari denied 313 U.S. 579; *Commissioner* v. *Bridgeport City Trust Co.*, 124 F. 2d 48 (C.A. 2), certiorari denied 316 U.S. 672.

[5] Similarly, a complete transfer of policies owned by the insured to some third person followed either immediately or at some later time by the creation of a trust with the insured as trustee under circumstances indicating that the entire transaction was preplanned might well be treated the same as one in which the insured created the trust himself.

[6] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

* * * * * * *

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

phasis supplied)—and the restrictions on a trustee's powers under New York law to deal with the income of a minority trust. The limiting external standards in the trust instruments related only to distributions of principal; no comparable provisions were applicable to distributions of income.

Where at the time of his death the settlor of an irrevocable trust retains the power to distribute the trust income or to accumulate such income and add it to principal, both the original principal and accumulated income of the trust is includable in the settlor's gross estate under section 2036(a)(2). *United States* v. *O'Malley*, 383 U.S. 627, 633; *Estate of Arthur J. O'Connor*, 54 T.C. 969, 973. "[T]he power to deny to the trust beneficiaries the privilege of immediate enjoyment and to condition their enjoyment upon their surviving the termination of the trust has been considered to be of sufficient substance to qualify as a power to 'designate' within the meaning of section 2036(a)(2)." *Estate of Arthur J. O'Connor*, 54 T.C. at 973. See *United States* v. *O'Malley*, 383 U.S. 627; *Industrial Trust Co.* v. *Commissioner*, 165 F. 2d 142 (C.A. 1), affirming on this issue *Estate of Milton J. Budlong*, 7 T.C. 756; sec. 20.2036-1(b)(3), Estate Tax Regs. Because we think that the power retained by Skifter over trust income was sufficiently broad and unrestricted to require inclusion of both the principal and accumulated income of the three trusts for his grandchildren in his gross estate under section 2036(a)(2), it is unnecessary for us to consider his other powers over the trust principal in relation to section 2038(a)(1).

Article 1(A) of each trust instrument provided that during the minority of the beneficiary the trust income "in the discretion of the trustee * * * may either be paid to, or applied to the use of, * * * [the named beneficiary] or accumulated and added to principal." Income accumulated in the trust for Skifter's granddaughter was to be distributed to her "When * * * and if" she attained 21 years of age. Under the trusts for each of the two grandsons, accumulated income became a part of principal and was distributable as such to the grandsons "if * * * then living" at the termination of the trusts. The power retained by the decedent here clearly amounted to an ability to "designate" beneficiaries within the meaning of section 2036(a)(2). *Estate of Arthur J. O'Connor*, 54 T.C. at 973. We find nothing in the cases from New York courts cited by petitioners, which effectively limits the broad retention of "discretion" by the decedent over the income of these trusts.

*Decision will be entered under Rule 50.*