ESTATE OF MORRIS R. SILVERMAN, AVRUM SILVERMAN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6741-70. Filed December 6, 1973.

*Moses M. Cohen*, for the petitioner.
*Marion L. Westen*, for the respondent.

STERRETT, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $2,155.01. However, $132.08 of said amount was attributable to the assessment of the penalty imposed by section 6651(a), I.R.C. 1954,[1] which was abated, leaving a

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

net deficiency of $2,022.93. Respondent subsequently conceded the deductibility of certain legal expenses, leaving the following issues for our consideration:

(1) Whether the assignment of a life insurance policy by the decedent, Morris R. Silverman, to his son, petitioner Avrum Silverman, was made "in contemplation of death" within the meaning of section 2035.

(2) If such assignment was made in contemplation of death, what amount is includable in the gross estate of the decedent.

(3) Whether decedent's gross estate must include certain jewelry. having a fair market value of $780 which the decedent inherited from his wife.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Decedent Morris R. Silverman died testate on July 26, 1966, in New York, N.Y. Letters testamentary were issued to the petitioner, Avrum Silverman, on September 2, 1966. At the time the petition herein was filed, the petitioner resided at Watertown, Mass.

The decedent was born on March 15, 1901. On May 25, 1961, the decedent purchased life insurance policy number 12553 from the Standard Security Life Insurance Co. of New York which insured his life and had a face value of $10,000. To keep the policy in effect, the decedent made monthly payments of $52.60. The decedent's wife Mabel Silverman was made primary beneficiary of the policy, and the petitioner was designated secondary beneficiary.

Mabel Silverman died of cancer on December 12, 1965, after an extended illness of 2 or 3 years. During the period of her illness, she required hospitalization on several occasions.

The decedent's medical history, dated December 22, 1965, states:

During the past several months patient has been under a great deal of stress. His wife has been dying and finally died about two weeks ago. He has noted some intermittent red blood in the stool during the last month and some pain in his back. In the past he had a fistula-in-ano, but he does not have any recurrence of that symptomatology. He has also eaten less and is not sleeping too well. He has lost his appetite.

On that date the decedent underwent a full physical examination. X-rays indicated a possible malignancy of the colon. No further evidence concerning the decedent's medical care was available until February 18, 1966.

On January 29, 1966, the decedent assigned to his son, the petitioner, all of his right, title, and interest in life insurance policy number 12553. From this point forward, the petitioner paid the monthly premiums of $52.60.

In a letter to the petitioner's attorney, Joseph Breitstone, the decedent's nephew and insurance broker, stated:

When I met with Morris Ralph Silverman to discuss the change of beneficiary, I recommended that he transfer ownership of the policy to his son Avrum since the estate would no longer reap the benefits of the marital deduction in the event of his death.

On February 18, 1966, the decedent was admitted to the Medical Arts Center Hospital in New York City, where he underwent surgery. During the operation, carcinoma (cancer) of the colon and liver involvement was found. Consequently, a transverse colostomy was carried out. In an attempt to limit the spread of cancer, chemotherapy was begun.

The decedent was discharged from the hospital on March 12, 1966, but was readmitted several times thereafter. He died on July 26, 1966.

The petitioner had made seven premium payments of $52.60 each at the time of his father's death.

## OPINION

The decedent transferred ownership of a life insurance policy on his life to his son approximately 6 months prior to his death. The first issue to be decided is whether this transfer was made "in contemplation of death" thereby making such property includable in the decedent's gross estate under the provisions of section 2035.[2]

Section 2035(b) creates a statutory presumption that any transfer made within 3 years of death, except a bona fide sale, is a transfer in contemplation of death. The petitioner must not only produce evidence refuting the presumption, but must also carry the burden of proof on this issue. *First Trust & Deposit Co.* v. *Shaughnessy*, 134 F. 2d 940 (C.A. 2, 1943); *Estate of Sumner Gerard*, 57 T.C. 749 (1972). In this decidedly factual endeavor, we must determine whether the dominant purpose in making the transfer was the thought of death or some purpose more closely associated with life motives. *United States* v. *Wells*, 283 U.S. 102 (1931); *Estate of Maurice H. Honickman*, 58 T.C. 132 (1972), affd. 481 F. 2d 1399 (C.A. 3, 1973).

---

[2] SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in the case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) APPLICATION OF GENERAL RULE.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.

The petitioner has argued that the decedent assigned the life insurance policy to him in order to avoid further premium payments. The original primary beneficiary, decedent's wife, predeceased him. Therefore, according to the petitioner, the decedent felt he no longer needed insurance. The only witness dealing firsthand with the decedent in respect of the insurance was Joseph Breitstone, his nephew and insurance broker. Breitstone testified that the decedent originally desired cancellation of the policy but was persuaded to assign the policy because his son would pay the premiums and the policy would no longer be part of his estate. He also explained that the cash surrender value was quite low at that time. Moreover the petitioner testified that his father, the decedent, was philosophically opposed to insurance and preferred to invest in stocks.

We hold that the transfer in issue was made in contemplation of death. The assignment took place on January 29, 1966. The decedent's medical history shows that on December 22, 1965, he underwent a complete physical examination and X-rays to find the cause of acute diarrhea and bleeding. The X-rays revealed a possible malignancy of the colon. After a gap of close to 2 months in the decedent's medical history, during which time the transfer in question took place, the decedent was admitted to a hospital for an operation. Although doctors removed a cancerous tumor, spreading of the disease had occurred, and the decedent died approximately 5 months later.

Whether the decedent knew death was near is subject to conjecture. Nevertheless, because of his symptoms, the operative procedures carried out, and his postoperative treatment, we feel quite certain that he knew he was seriously ill.[3] Moreover the close proximity he maintained with his wife during her 2–3-year bout against cancer may have given him special cause to worry. Also, at the age of 65, he was not likely to take his situation lightly. Bodily condition may naturally give rise to fear of death. *United States* v. *Wells, supra* at 117; *Estate of Sumner Gerard, supra* at 760; *Estate of Oliver Johnson*, 10 T.C. 680 (1948). Petitioner's testimony has little weight on this particular point since he was in California during the early part of decedent's illness.

Breitstone, in a letter responding to petitioner's attorney prior to the trial herein, stated that the assignment was made because "the estate would no longer reap the benefits of the marital deduction in the event of his death." In this correspondence Breitstone failed to mention that the decedent desired to cancel the policy. Rather he stated that the discussion occurred when the decedent was changing

---

[3] We were not presented any medical evidence concerning the near 2-month interlude, but we strongly suspect the decedent to have been aware of serious illness prior to his admission to the hospital.

beneficiaries. The motive to avoid taxes is usually intended to relieve beneficiaries of taxes after death. *McIntosh's Estate* v. *Commissioner*, 248 F. 2d 181 (C.A. 2, 1957), affirming 25 T.C. 794 (1956) ; *Vanderlip* v. *Commissioner*, 155 F. 2d 152 (C.A. 2, 1946), affirming 3 T.C. 358 (1944). The statute was specifically enacted to prevent the evasion of estate taxes. *Milliken* v. *United States*, 283 U.S. 15, 23 (1931) ; see also sec. 20.2035–1(c)(1), Estate Tax Regs. Moreover a significant factor in certain cases has been the reliance on an insurance agent's advice to avoid estate taxes by making transfers. *Slifka* v. *Johnson*, 161 F. 2d 467 (C.A. 2, 1947) ; *Estate of Edwin W. Rickenberg*, 11 T.C. 1 (1948).

Lastly the petitioner has testified that the decedent rarely made gifts over $50 or $100. The decedent's assignment, in light of his frugality, appears more testamentary in nature than if large gifts were his normal manner. *Estate of Sumner Gerard, supra* at 760. In addition, if decedent truly had no paternal interest in his son and was more concerned with his own financial welfare, it would seem more likely that he would have canceled the policy and pulled down the cash surrender value for his own use.

After a careful review of all the evidence, we find that petitioner has not persuaded us that the transfer was anything other than a distribution in anticipation of death. *Estate of Berman* v. *United States*, 487 F. 2d 70 (C.A. 5, 1973) ; *Bel* v. *United States*, 452 F. 2d 683 (C.A. 5, 1971), certiorari denied 406 U.S. 919 (1972).

Having found that the decedent transferred the life insurance policy in contemplation of death, we must now determine the quantum of inclusion in the decedent's gross estate. The transfer of a life insurance policy in contemplation of death normally requires inclusion in the gross estate at face value. *Estate of Maurice H. Honickman, supra* at 136; *Estate of Arthur H. Hull*, 38 T.C. 512, 528 (1962), reversed on other grounds 325 F. 2d 367 (C.A. 3, 1963). In the instant case however, the petitioner paid all the insurance premiums after the assignment. Of total premiums amounting to $3,261.20, petitioner paid $368.20 or 11.29 percent and the decedent paid $2,893 or 88.71 percent. Under these circumstances we feel that the petitioner contributed to the value of the policy, and it would be inappropriate to include in the gross estate that portion of the value which petitioner contributed.

Throughout its existence, including the time of transfer, the policy had a face value of $10,000. At the time of the decedent's death however, a certain number of premiums were required to keep the face value intact. It is apparent, therefore, that at the time the decedent transferred the policy, only a portion of the premiums necessary to maintain the face value payment on death had in fact been paid. The petitioner's continued premium payments were thus a vital

part of the consideration necessary to secure full payment on the insurance policy on decedent's death. To hold otherwise would tax the estate on an asset greater than that which the decedent transferred. *Liebmann* v. *Hassett*, 148 F. 2d 247 (C.A. 1, 1945).[4] Cf. *Scott* v. *Commissioner*, 374 F. 2d 154 (C.A. 9, 1967), reversing 43 T.C. 920 (1965). We are further bolstered in our decision by sec. 20.2035–1(e), Estate Tax Regs., which states: "However, if the transferee has made improvements or additions to the property, any resulting enhancement in the value of the property is not considered in ascertaining the value of the gross estate." We therefore hold that the decedent's estate must include that portion of the face value of the life insurance policy which the decedent's premium payments bore to all premium payments.[5]

The last issue for decision is whether decedent's gross estate must include certain jewelry having a fair market value of $780 which the decedent inherited from his wife. The petitioner did not present any proof on this issue at the trial herein. Although petitioner argued surprise in his reply brief, this issue was properly raised by the respondent in the deficiency notice, pleadings, and at the trial. We may only conclude that respondent's determination is correct. Rule 32, Tax Court Rules of Practice.

*Decision will be entered under Rule 50.*

---

[4] It is surprising that neither party cited this case which, insofar as we can find, is clearly the case most directly in point.

[5] Petitioner has misplaced his reliance on cases such as *Estate of Hector R. Skifter*, 56 T.C. 1190 (1971), and *Estate of Inez G. Coleman*, 52 T.C. 921 (1969). The factual situations therein did not involve the transfer of *life insurance policies* in contemplation of death.